UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VILAYCHITH KHOUANMANY,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL CARVAJAL,<br><br>Respondent. | Case No. 20-CV-02858-LHK<br><br>**ORDER REOPENING ACTION; GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; DISMISSING PETITION WITH LEAVE TO AMEND AS TO ONE CLAIM AND WITHOUT LEAVE TO AMEND AS TO FOUR CLAIMS** |

Petitioner, a prisoner at the Federal Correctional Institution in Dublin, California ("FCI Dublin") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"). Dkt. No. 1. The Petition was dismissed without prejudice on June 22, 2020. *See* Dkt. No. 10.

The Court reopens the instant action in compliance with an order from the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"). *See* Dkt. No. 26, *Khouanmany v. Caraval*, Appeal No. 20-16352 (9th Cir. May 19, 2021) ("Ninth Circuit Order").

For the reasons stated below, the Court dismisses the Petition with leave to amend as to one of petitioner's five claims and without leave to amend as to the four remaining claims.

1

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

## I. BACKGROUND

### A. Factual Background

"In 2016, Vilaychith Khouanmany pleaded guilty to conspiracy to distribute methamphetamine after law enforcement intercepted a package of drugs that she sent from California to Iowa." *United States v. Khouanmany*, 726 F. App'x 514 (8th Cir. 2018). Petitioner was designated a career offender in the presentence report based on her prior drug offenses. *See* Dkt. No. 28 ("Reopening Motion") at 2. Petitioner was sentenced to 151 months' imprisonment. *See id*.

As noted, *supra*, petitioner currently is incarcerated at FCI Dublin. *See* Pet. at 1.[1] Before being incarcerated at FCI Dublin, petitioner was incarcerated in Nevada and Arizona. *See id*. at 8. Petitioner "got transferred April 2019," was "in transit until June or July 2019," and appears to have settled at FCI Dublin on or about July 10, 2019. *Id*. at 10.

#### 1. The Bureau of Prisons's Framework for Administrative Appeals

The Bureau of Prisons ("BOP") has established procedures by which inmates can seek review of "an issue relating to any aspect" of an inmate's confinement. 28 C.F.R. §§ 542.10. *See* 542.10-542.17 (2016) (setting forth the BOP's procedures). The procedures apply to all inmates in programs operated by the BOP. *Id*.

Under the BOP's procedures, an inmate first must attempt informal resolution of the issue with prison staff. *See* 28 C.F.R. § 542.13(a). If the inmate cannot resolve the issue informally, the inmate must submit a written administrative appeal to the Warden. *See id*. at § 542.14(d). The Warden is given 20 days to respond to the inmate's administrative appeal. *See id*. at § 542.18.

An inmate who is not satisfied with the Warden's response may then submit an appeal to the Regional Director. *See id*. at § 542.15(a). The Regional Director is given 30 days to respond to the inmate's administrative appeal. *See id*. at § 542.18.

---

[1] Unless otherwise indicated, citations to the docket refer to filings in the instant action. Citations to specific page numbers refer to the page numbers applied by the electronic filing system.

Finally, an inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel of the BOP. *See id*. at § 542.15(a). The General Counsel is given 40 days to respond to the inmate's administrative appeal. *See id*. at § 542.18.

An inmate must file and receive a denial at all three levels (Warden, Regional Director, and General Counsel) before she is considered to have exhausted her available administrative remedies. *See id*. at § 542.15(a). ("Appeal to the General Counsel is the final administrative appeal.").

### 2. Petitioner's Administrative Appeals

The Petition provides the following chronology of petitioner's attempts to exhaust:

On January 7, 2020, petitioner submitted a request for an informal resolution to T. Minor, whose role at FCI Dublin is unidentified. Pet. at 2. This request was forwarded to S. Milliken, a unit manager ("Unit Manager Milliken"). *See id*. The Petition does not identify the subject of this request for informal resolution. *See id*.

On March 2, 2020, petitioner contacted T. Minor and Unit Manager Milliken. *See id*. at 3. On March 29, 2020, petitioner contacted Unit Manager Milliken to ask about the status of a "BP 9 [petitioner] turned in with Ms. Minor two weeks ago." *Id*. at 3, 13. On March 30, 2020, Unit Manager Milliken responded, "I will discuss this with her (T. Minor) when she returns." *Id*. at 3, 13. The Petition does not identify the subject of this request for informal resolution. *See id*.

On April 3, 2020, petitioner contacted Associate Warden T. Mischel, the associate warden of FCI Dublin ("Associate Warden Mischel").[2] *See id*. This request for informal resolution raised the issue of earned time credit under the First Step Act. *See id*. On April 10, 2020, Associate Warden Mischel responded with petitioner's release date, which was calculated using petitioner's good conduct time. *See id*. at 13. "[Petitioner] replied: 'I am not request GCT I am requesting

---

[2] Petitioner refers to this individual as "A.W. Mischell." *See generally*, Pet. The Court notes that Tamara Mischel was the associate warden for FCI Dublin during the relevant time period. *See Simmons v. Luke*, No. 20-17041, 2020 WL 9257960, at *1 (9th Cir. Oct. 26, 2020) (identifying Tamara Mischel as the associate warden).

3
Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

"earned time credit" under Pattern programming, pursuant to FSA.'" *Id.* On April 14, 2020, Associate Warden Mischel responded, "Dublin has not started any classes which inmates can earn credit for as of yet." *Id.* at 14. Between April 14 and April 17, 2020, petitioner replied to Associate Warden Mischel that petitioner was "not requesting GCT or if classes started," but was instead "requesting and appealing BOP decision that [petitioner] do[es] not qualify for 'earned time credit and that [petitioner] [is] a medium Pattern score.'" *Id.*

On April 13, 2020, petitioner again contacted Unit Manager Milliken. *Id.* at 15. The Petition reveals that this contact concerned the determination that petitioner was ineligible for earned time credits. *See id.* Petitioner forwarded this email to the warden of FCI Dublin on April 15, 2020. *See id.*

### 3. Petitioner's Prior Cases

Petitioner was convicted and sentenced in the United States District Court for the Southern District of Iowa ("Iowa District Court"). Pet. at 1. In that court, she filed a motion to vacate her sentence in that court, which was dismissed. *See* Dkt. Nos. 1, 14, *Khouanmany v. United States of America*, No. 4:19-cv-00087-JAJ (S.D. Iowa). This dismissal was summarily affirmed by the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit"). *See Khouanmany v. United States of America*, Appeal No. 19-03274 (8th Cir. April 1, 2020).

In 2017, petitioner filed a civil rights complaint in the United States District Court for the Eastern District of California alleging, among other things, that she had been sexually assaulted by federal officials. *See* Dkt. No. 102, *Khouanmany v. United States Marshals*, No. 2:17-cv-01326-TLN-JDP (E.D. Cal. Sept. 3, 2019) (Third Amended Complaint). That lawsuit is ongoing.

Also in 2017, petitioner filed a civil rights suit in the Iowa District Court, challenging a search. *See* Dkt. No. 1, *Khouanmany v. Doe*, No. 4:17-cv-00438-JEG-CFB (S.D. Iowa Dec. 15, 2017). That lawsuit was dismissed at screening because, on its face, the complaint was *Heck*-barred and failed to state a claim. *See* Dkt. No. 6, *Khouanmany v. Doe*, No. 4:17-cv-00438-JEG-CFB (S.D. Iowa Dec. 15, 2017). The Eighth Circuit summarily affirmed the dismissal. *See*

4

*Khouanmany v. Doe*, Appeal No. 18-1771 (8th Cir. Aug. 30, 2018).

In 2019, petitioner filed a civil rights suit in the United States District Court for the District of Arizona ("Arizona District Court"), challenging prison conditions. *See* Dkt. No. 1, *Khouanmany v. Penzone*, No. CV-19-02983-PHX-SRB (JZB) (D. Ariz. April 18, 2019). That lawsuit was dismissed for failure to state a claim and as prolix, after petitioner failed to file a coherent third amended complaint. *See* Dkt. No. 51, *Khouanmany v. Penzone*, No. CV-19-02983-PHX-SRB (JZB) (D. Ariz. August 3, 2020). An appeal of that dismissal is pending before the Ninth Circuit. *See Khouanmany v. Penzone*, Appeal No. 20-16594 (9th Cir.)

### B. Procedural Background

Petitioner filed the Petition on April 17, 2020. *See* Pet. at 9 (stating, under penalty of perjury, that petitioner placed the Petition into the prison mail system on this date); *see also Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir.2001) ("Under the 'prison mailbox rule' . . . a prisoner's . . . habeas petition is deemed filed when he hands it over to prison authorities for mailing in the district court.") (citation omitted).

The Court received the Petition on April 24, 2020. *See id*. at 1. That same day, the Court sent notices to petitioner, informing her that within 28 days petitioner needed to complete an in forma pauperis ("IFP") application and file her consent or declination to magistrate judge jurisdiction. Dkt. Nos. 3, 4. Petitioner filed neither her complete IFP application nor her consent or declination to magistrate judge jurisdiction. *See generally*, Dkt. Accordingly, on June 22, 2020, more than four weeks after petitioner's deadline to respond to the Court's notice had passed, the Court dismissed the Petition without prejudice. *See* Dkt. No. 10.

On July 2, 2020, petitioner filed a notice of appeal. *See* Dkt. No. 15. This act divested this Court of jurisdiction over the instant matter. *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) ("Once a notice of appeal is filed, the district court [loses jurisdiction] over the matters being appealed.").

5

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

At least one week after she filed her notice of appeal, petitioner filed an IFP application. *See* Dkt. No. 18 (dated July 10, 2020). On July 13, 2020, petitioner filed a "supplemental brief" in support of her Petition in this Court. *See* Dkt. No. 17. The "supplemental brief" asked the Court to "label all legal mail" with an instruction that FCI Dublin, the facility where petitioner is incarcerated, open all legal mail in petitioner's presence. *See id*. It also asked the Court to "accept her completed ifp application with supporting documentation within a timely manner as soon as she was made aware please grant[] her motion." *Id*. Neither the IFP application nor the "supplemental brief" asked the Court to reconsider its dismissal of the Petition. *See* Dkt. Nos. 17, 18. Indeed, neither document used the words "reconsider," "reopen," or any synonyms thereto. *See id*. Accordingly, the Court issued an order in which it explained that to petitioner that this Court no longer had jurisdiction; that the Court would not reopen this action because petitioner had not moved for reconsideration; and that the Petition had been dismissed without prejudice, meaning that petitioner could re-file her habeas petition in this Court with proper documentation, or could seek appropriate relief in the sentencing court. *See* Dkt. No. 21. The Court noted that not only had petitioner not filed a motion for reconsideration, she had not filed any motions within ten days of the Court's dismissal order. *See id*. (citing *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)).

After this Court declined to reopen the instant action, the Ninth Circuit considered petitioner's appeal of the dismissal order. The Ninth Circuit Order noted that petitioner's post-dismissal supplemental brief "explain[ed] that [petitioner] had never received the notice and ask[ed] the court to accept her simultaneously filed, corrected IFP application." 9th Cir. Order at 2. The Ninth Circuit concluded that this Court had erred in its interpretation of the "supplemental brief" because, although the "supplemental brief" did not expressly ask for reconsideration and reopening, it "sought timely reconsideration and relief from the June 22, 2020 judgment under Federal Rule of Civil Procedure 60(b)." *Id*. at 3. The Ninth Circuit also noted that the Federal Rules of Appellate Procedure had been amended since its decision in *Natural Resources Defense*

6

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

*Council*, and that petitioner now had twenty-eight days in which to preserve the district court's jurisdiction by filing a motion to reopen. *See id*. (citing Fed. R. App. P. 4(a)(4)(A)). Because petitioner had filed a motion which the Ninth Circuit construed as a motion to reopen, and because this motion was filed within twenty-eight days of the Court's judgment, the Ninth Circuit "therefore reverse[d]" this Court's post-judgment order, and "remand[ed] for the district court to consider the [supplemental brief] as a timely tolling motion." *Id*.

After the Ninth Circuit remanded the instant action to this Court, petitioner filed a motion requesting reopening of the action ("Reopening Motion") on May 27, 2021. *See* Dkt. No. 28.

## II. ORDER REOPENING ACTION

In the May 27, 2021 Reopening Motion, petitioner argues that her July 13, 2020 "supplemental brief" filed after this Court's June 22, 2020 dismissal order should be construed as a motion for reconsideration, and that the July 13, 2020 "supplemental brief" was timely filed. *See id*. at 1.

The Court understands the Ninth Circuit Order to have concluded that the "supplemental brief" timely sought reconsideration of the Court's dismissal order. Accordingly, the Court GRANTS the Reopening Motion and reopens the instant action.

The judgment entered on June 22, 2020, is hereby VACATED. Dkt. No. 11. The Clerk shall reopen this matter.

## III. ORDER GRANTING IFP APPLICATION

As noted above, petitioner filed an IFP application after the Petition had been dismissed. *See* Dkt. No. 18. The IFP application reveals that petitioner has a $0 account balance. *See* Dkt. No. 18-1. Accordingly, petitioner's IFP application is GRANTED.

Although this does not affect the instant habeas petition, the Court notes that petitioner has had at least two actions dismissed for reasons which qualify as "strikes" under the Prison Litigation Reform Act. *See* Dkt. No. 6, *Khouanmany v. Doe*, No. 4:17-cv-00438-JEG-CFB (S.D. Iowa Dec. 15, 2017) (dismissing complaint for failure to state a claim and as *Heck*-barred on its

face); Dkt. No. 51, *Khouanmany v. Penzone*, No. CV-19-02983-PHX-SRB (JZB) (D. Ariz. August 3, 2020) (dismissed for failure to state a claim and as prolix, after petitioner failed to file a coherent third amended complaint). For petitioner's benefit, the Court notes that if she incurs one more "strike," then "[i]n no event" will she be able to "bring a civil action or appeal a judgment in a civil action" without paying the filing fee. *See* 28 U.S.C. § 1915(g)

## IV. ORDER DISMISSING PETITION WITH LEAVE TO AMEND AS TO ONE CLAIM AND WITHOUT LEAVE TO AMEND AS TO FOUR CLAIMS

### A. Standard of Review

Section 2241 allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Summary dismissal is appropriate where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false. *See Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977)).

### B. Petitioner's Claims

The Ninth Circuit Order recognized the following claims in the Petition:
  (1) wrongful denial of earned time credit under the First Step Act and an improper Bureau of Prisons risk assessment;
  (2) improper issuance of an incident report;
  (3) entitlement to halfway house or home confinement;
  (4) deprivation of adequate medical care; and
  (5) release under the Second Chance Act, First Step Act, and CARES Act.

9th Cir. Order at 1.

In the Reopening Motion, petitioner argues that the Petition "primarily challenges the BOP's determination that she is ineligible for earned time credits under the First Step Act of 2018," and "also challenges the BOP's assessment of Khouanmany's risk score; improper issuance of an incident report; retaliatory acts taken against her; inadequate medical care at the prison; entitlement

8
Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

to home confinement; and release under the Second Chance Act, First Step Act, and CARES Act." Reopening. Mot. at 1-2.

The Court will discuss each claim in turn. Petitioner's claim for retaliation, which was not recognized by the Ninth Circuit, will be addressed in the section discussing her claim regarding inadequate medical care.

### 1. Claim 1 is dismissed with leave to amend.

Petitioner's first claim challenges an allegedly "wrongful denial of earned time credit under the First Step Act and an improper Bureau of Prisons risk assessment." 9th Cir. Order at 1.

On December 21, 2018, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, was enacted. "The Act implemented a number of prison and sentencing reforms." *Bottinelli v. Salazar*, 929 F.3d 1196, 1197–98 (9th Cir. 2019). Relevant to Claim 1, the First Step Act required the BOP to permit prisoners to accrue up to 54 days per year of "good time credit" for good behavior, and eventually to award "earned time credit" for participation in recidivism reduction programs. *See* 18 U.S.C. § 3624(b), (g). "Good conduct time" differs from "earned time credits." *See Bottinelli*, 929 F.3d at 1197 (explaining the difference between the two types of credits).

As explained below, Claim 1 appears to be unexhausted and may additionally be unripe.

#### a. Claim 1 was not exhausted.

The statute under which petitioner filed her habeas petition, 28 U.S.C. § 2241, "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (quotation marks and citation omitted). As a prudential matter, however, habeas petitioners must exhaust available remedies before seeking relief under section 2241. *Id.*; *Huang v. Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). Because the exhaustion requirement applicable to Section 2241 petitions is judicially created and not a statutory requirement, a failure to exhaust does not deprive a court of jurisdiction over the controversy. *See Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds, Koray*, 515 U.S. at 54-55.

Prudential limits, like jurisdictional limits, "are ordinarily not optional." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *overruled on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Accordingly, "[l]ower courts are, . . . not free to address the underlying merits without first determining [whether] the exhaustion requirement has been satisfied . . . ." *Laing*, 370 F.3d at 998.

Here, it is undisputed that the BOP has established an administrative procedure by which an inmate in a federal prison may seek review of any aspect of imprisonment. *See* 28 C.F.R. §§ 542.10-542.17. It is also undisputed that an inmate must generally file and receive a denial at all three levels (Warden, Regional Director, and Central Office) before she is considered to have exhausted her available administrative remedies. *See id*. at § 542.15(a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director . . . . An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel . . . . Appeal to the General Counsel is the final administrative appeal.").

The face of the Petition reveals that petitioner did not exhaust Claim 1 because petitioner did not receive a denial from the Warden, the Regional Director, and the General Counsel before proceeding to federal court. *See* 28 C.F.R. § 542.15. Petitioner states that she contacted the Warden of FCI Dublin with her request on April 15, 2020. Pet. at 13. The Warden is given 20 days to respond, *see* 28 C.F.R. § 542.18, and so the Warden's response to petitioner's request was not due until May 5, 2020. However, petitioner filed the instant Petition on April 17, 2020, *see* Pet. at 9, well before the Warden's due date. Petitioner thus did not complete even the first required step to exhaust her claim. Although the Reopening Motion argues that petitioner exhausted her claim "through the prison's administrative grievance process," *see* Reopening Mot. at 3, it does not address petitioner's failure to exhaust using BOP's established processes, *see generally*, *id*.

10

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

In some instances, exhaustion may be excused. These instances include if the administrative remedy is inadequate, ineffective, or if attempting to exhaust would be futile or would cause irreparable injury. *See Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993). Exhaustion may be futile where an official policy of the BOP requires denial of the claim. *See Ward v. Chavez*, 678 F.3d 1042, 1045-46 (9th Cir. 2012).

Here, it appears unlikely that petitioner's failure to exhaust should be excused. Petitioner did not identify any official policy of the BOP which would require denial of her claim. Moreover, although petitioner makes repeated references to FCI Dublin being "locked down" due to Covid-19, *see generally*, Pet., there is no indication in the Petition that administrative remedies were inadequate or ineffective. Petitioner's administrative appeal does not appear to have languished at the informal level, and she waited only two days after sending her formal administrative appeal to the Warden before she filed the instant Petition. Although petitioner represents that she "submitted *informal* resolution seven times," Dkt. No. 6 at 2 (emphasis added), she does not represent that she was prevented from pursuing her *formal* administrative appeal, *see generally id.* However, the Court will permit petitioner to amend the Petition to explain why exhaustion should be excused in this instance.

If petitioner chooses to amend the Petition, she should explain why exhaustion should be excused. As detailed below, petitioner should also address the issue of ripeness. *See S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 508 (9th Cir. 1990) ("Ripeness is a threshold jurisdictional question.").

**b. Claim 1 may be unripe.**

The Ninth Circuit found that petitioner alleged she was wrongfully denied earned-time credits. 9th Cir. Order at 1. To the extent petitioner asks to be awarded such credits, rather than informed of her risk assessment, her claim may be unripe.

Standing is a jurisdictional issue which must be addressed before reaching substantive matters. *See Center for Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009).

11

Federal courts have the power and the duty to raise the issue of standing sua sponte and to dismiss the action if standing is wanting. *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Standing is determined as of the date of the filing of the complaint. *Yamada v. Snipes*, 786 F.3d 1182, 1204 (9th Cir. 2015). A plaintiff must demonstrate that the case is ripe—"not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Because this Court is "required sua sponte to examine jurisdictional issues such as standing," *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999), it notes that jurisdiction may be lacking here. The First Step Act gave the BOP until July 19, 2019 to develop a risk and needs assessment system; until January 15, 2020, to initially assess each inmate's risk and needs; and until January 15, 2022 to complete a full assessment of each inmate, phase in programming, and provide recidivism reduction programs and productive activities for all inmates. *See* 18 U.S.C. §§ 3632(a), 3621(h)(2)(A), (B). Multiple courts have held that, because the BOP has until 2022 to implement this program, inmates' claims for earned time credits are not yet ripe. *See, e.g., Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *2-3 (S.D.N.Y. Apr. 20, 2021) (finding that claim is not ripe because BOP is not yet required to award earned-time credits); *Kennedy-Robey v. FCI Pekin*, No. 20-CV-1371, 2021 WL 797516, at *4 (C.D. Ill. Mar. 2, 2021) (same).

Claim 1 is dismissed with leave to amend. If petitioner chooses to amend this claim, she must explain why her failure to exhaust should be excused and why this claim is ripe. If petitioner fails to persuade the Court that exhaustion should be excused and that this claim is ripe, then Claim 1 will be dismissed without prejudice to refiling in a new federal habeas petition after Claim 1 ripens and petitioner has properly exhausted the claim.

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

### 2. Claim 2 is dismissed without leave to amend.

Petitioner's second claim challenges an allegedly "improper issuance of an incident report." 9th Cir. Order at 1. This claim is dismissed without leave to amend.

First, the face of the Petition reveals that the claim is not properly brought in this Court. Petitioner states that the incident report was issued on April 5, 2019. Pet. at 7. But on that date, petitioner was not yet incarcerated at FCI Dublin. *See id*. at 10 (stating that petitioner was ordered transferred in April 2019 and "in transit until June or July 2019"). Indeed, the Petition reveals that the incident report was issued while petitioner was incarcerated in Arizona. *See id*. at 16 (referring to incidents in Maricopa County). This claim properly should be filed in the district where the incident report was issued. *See* 28 U.S.C. § 1391(b) (explaining that venue lies where defendants reside or where the events giving rise to the claim took place).

Second, petitioner has already filed this claim in a civil rights action in Arizona District Court. *See* Dkt. No. 1, *Khouanmany v. Penzone*, No. CV-19-02983-PHX-SRB (JZB) (D. Ariz. April 18, 2019). That lawsuit was dismissed for failure to state a claim and as prolix after petitioner failed to file a coherent third amended complaint. *See* Dkt. No. 51, *Khouanmany v. Penzone*, No. CV-19-02983-PHX-SRB (JZB) (D. Ariz. August 3, 2020). An appeal of that dismissal is pending before the Ninth Circuit. *See Khouanmany v. Penzone*, Appeal No. 20-16594 (9th Cir.). Although the Arizona District Court dismissed petitioner's complaint without prejudice, petitioner may not re-file this claim in a new action while her appeal is still pending. It is well-established that a district court may dismiss "a complaint 'that merely repeats pending or previously litigated claims.'" *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (holding that to do so is not an abuse of discretion). *See also Adesanya v. United States*, No. 15-CV-01379-KAW, 2015 WL 5961938, at *4 (N.D. Cal. Oct. 14, 2015) (dismissing lawsuit that was duplicative of pending appeal).

Finally, petitioner's challenge to the incident report is not properly brought in a habeas action. "'Federal law opens two main avenues to relief on complaints related to imprisonment: a

13

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the lawfulness of confinement or to particulars affecting its duration are the province of habeas corpus.'" *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004)). "An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983." *Id.*; *see also Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) ("A § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus."). Here, petitioner complains that officers "threw [her] in the SHU without [a] proper hearing," Pet. at 7, and that she was deprived of medications and commissary access for a period of time, *id.* at 16-17. This claim falls outside the "core of habeas corpus" because it will not lead to petitioner's speedier release from incarceration, and therefore should be brought, if at all, in a civil rights action.

For these reasons, Claim 2 is dismissed without leave to amend. However, because the Arizona District Court dismissed petitioner's civil rights lawsuit without prejudice, this Court's dismissal is without prejudice to petitioner renewing her claim in a civil rights action in the Arizona District Court after the Ninth Circuit resolves her appeal.

**3. Claim 3 is dismissed without leave to amend.**

Petitioner's third claim argues that she is "entitle[d] to halfway house or home confinement." 9th Cir. Order at 1. In making this argument, petitioner relies on the Second Chance Act, the First Step Act, and the CARES Act. Pet. at 7. This claim is dismissed without leave to amend because the Court does not have the authority to order the BOP to place petitioner on home confinement under any of these statutes.

The Second Chance Act of 2007 amended 18 U.S.C. § 3624 to provide that the statute "*may* be used to place a prisoner in home confinement." 18 U.S.C. § 3624(c)(2) (emphasis added); *see also Sacora v. Thomas*, 628 F.3d 1059, 1062 & n.3 (9th Cir. 2010) (explaining effect of Second Chance Act on § 3624). Thus, the effect of the Second Chance Act was to vest the

14
Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

BOP with the discretion to decide whether to place an inmate on home confinement. The Ninth Circuit repeatedly has held that this statute does not grant a district court the authority to order the BOP to place an inmate on home confinement; the BOP possesses sole authority to make that determination. *See United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) ("[T]he [district] court has no jurisdiction to select the place where the sentence will be served. Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons."); *see also United States v. Saaib*, 585 F. App'x 440, 441 (9th Cir. 2014) ("the district court did not err by concluding it lacked the authority to sentence Saaib to home or community confinement") (citations omitted).

The First Step Act of 2018 further modified 18 U.S.C. § 3624 to provide that the BOP "shall" use its authority regarding home confinement "to the extent *practicable*." 18 U.S.C. § 3624(c)(2) (emphasis added). As with the change wrought by the Second Chance Act, this amendment has been recognized to confer discretion on the BOP which is not amenable to challenge via a section 2241 petition. *See Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625."); *see also Mohsen v. Graber*, 583 F. App'x 841, 842 (9th Cir. 2014) (holding a district court lacked jurisdiction to consider a First Step Act claim in a section 2241 petition) (applying *Reeb,* 636 F.3d at 1227–29); *Slice v. Tews*, No. C 10-0838 LHK PR, 2011 WL 6091089, at *2 (N.D. Cal. Dec. 6, 2011) (same).[3]

Similarly, relief is unavailable under the CARES Act of 2020 because that Act also grants the BOP discretion. The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to transfer incarcerated defendants to home

---

[3] *See also Johnson v. Thompson*, No. 2:19-CV-2431-EFB P, 2020 WL 2106345, at *1 (E.D. Cal. Mar. 19, 2020) ("assignment to home confinement [under the First Step Act] is discretionary and thus affords petitioner no habeas relief"); *Ioane v. Merlak*, 1:19-cv-1251 JLT (HC), 2019 WL 5699098, at *2 (E.D. Cal., Sept. 27, 2019) (same).

confinement without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). Courts have consistently found that the CARES Act does not allow judges the authority to order home detention. *See, e.g., Cruz v. Jenkins*, No. 20-CV-03891-LHK, 2020 WL 6822884, at *3 (N.D. Cal. Nov. 20, 2020) ("[T]he BOP's determination remains discretionary and outside the scope of a Section 2241 petition even if the petition purports to rely on the CARES Act.").[4]

A motion for compassionate release would be a more procedurally appropriate mechanism for petitioner to request transfer to home confinement. However, such a request would not be proper before this Court because any relief available under 18 U.S.C. § 3582 must be sought in Petitioner's criminal case. It is the sentencing court that would make any modification to a term of imprisonment under that section. *See* 18 U.S.C. § 3582(c) (providing that a sentencing court "may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant"). As the Third Circuit recently stated: "Section 3582's text requires those motions to be addressed to the sentencing court." *United States v. Raia*, 954 F.3d 594, 596 (3rd Cir. 2020). The Sixth, Tenth, and D.C. Circuits agree. *See Rodriguez-Aguirre v. Hudgins*, 739 F. App'x 489, 491 n.2 (10th Cir. 2018) (holding that a district court "lacked authority to entertain" a compassionate release motion, where

---

[4] *See also United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (considering a CARES Act claim, and holding that the district court "lacked authority to change Saunders's place of imprisonment")*; United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020) (explaining that the BOP decides which inmates are eligible for home confinement); *United States v. Williams*, 829 F. App'x 138, 139 (7th Cir. 2020) ("Williams misapprehends the nature of the CARES Act. The act expanded the Bureau's power to "place a prisoner in home confinement" . . . but reserved the determination of "suitable candidates" for home confinement to the Bureau. . . . The act carved out no role for the courts in making such determinations.") (citations omitted); *United States v. Brummett*, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) ("[T]o the extent that Brummett sought relief under the CARES Act, the district court correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP.").

16
Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

it was not the sentencing court); *see also United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019) ("The authority granted by the First Step Act is limited: 'A court that imposed a sentence for a covered offense may . . . impose a reduced sentence . . . .'") (emphasis added) (quoting The First Step Act, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194 (Dec. 21, 2018)); *United States v. Richardson*, 948 F.3d 733,749 (6th Cir. 2020) ("[A] *sentencing court* 'may not modify a term of imprisonment once it has been imposed' except under certain circumstances.") (emphasis added); *United States v. Smith*, 896 F.3d 466, 473 (D.C. Cir. 2018) (noting that "a sentencing court" must decide "whether to grant a sentence reduction"). Petitioner therefore may wish to file a motion for compassionate release in the Iowa District Court.

Because the Court lacks the authority to order the BOP to transfer petitioner to home confinement under the Second Chance Act, the First Step Act, or the CARES Act, Claim 5 is dismissed without leave to amend. However, this dismissal is without prejudice to petitioner filing a motion for compassionate release in *United States v. Khouanmany*, No. 4:16-cr-00045-JAJ-HCA-1 (S.D. Iowa).

### 4. Claims 4 and 6 are dismissed without leave to amend.

Petitioner's fourth claim is that she has been "depriv[ed] of adequate medical care." 9th Cir. Order at 1. Petitioner's sixth claim, raised in the Reopening Motion, is that she was retaliated against by prison officials. *See* Reopening Mot. at 1, 2, 6. These claims are dismissed without leave to amend.

As noted, *supra*, claims challenging the conditions of confinement, rather than its lawfulness, must be brought under § 1983. See *Hill*, 547 U.S. at 579. Here, petitioner asks "[t]o receive proper and adequate medical care and treatment or just let me out on home confinement . . . ." Pet. at 8. To the extent petitioner asks the Court to modify the conditions of her confinement, this claim should be brought in a civil rights action. Similarly, to the extent petitioner asks the Court to enjoin or order compensation for alleged retaliation, this claim should be brought in a civil rights action.

17

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

To the extent petitioner seeks release due to the allegedly inadequate medical care, her claim fails on the merits. Where a petitioner seeks release from her sentence on the grounds that she cannot receive medical care, she must show that no constitutionally acceptable treatment can be provided while she is imprisoned. *See United States v. Kidder*, 869 F.2d 1328, 1330-31 (9th Cir. 1989) ("In order to prevail" on a claim which "seeks to void completely his prison term," a prisoner "must show that *no* constitutionally acceptable treatment can be provided while he is imprisoned."). It is irrelevant whether the current treatment is inadequate; a petitioner must show that it cannot be made adequate. *See id.* at 1331. Here, petitioner vaguely alleges that she "ha[s] been suffering in pain and torture for too long in the BOP." Pet. at 8. She also alleges that she needs to see a dermatologist but has been denied access to such a specialist and to necessary skin medications. *See id.* at 20. Neither of these alleged Eighth Amendment violations is incurable. Indeed, the Petition reveals that petitioner has received the required medical treatment in the past. *See id.* at 17 (referring to medications prescribed in prison). Accordingly, to the extent petitioner seeks release for inadequate medical care, this claim fails on the face of the Petition.

For these reasons, Claims 4 and 6 are dismissed without leave to amend. However, this dismissal is without prejudice to petitioner renewing her claims in a civil rights action.

**5. Claim 5 is dismissed without leave to amend.**

Petitioner's fifth claim is for "release under the Second Chance Act, First Step Act, and CARES Act." 9th Cir. Order at 1. This claim is dismissed without leave to amend.

Petitioner is not eligible for release under the Second Chance Act. Although that Act provides for the release of "eligible elderly offender[s]," inmates must be over the age of 60 or be terminally ill in order to be eligible. *See* 34 U.S.C. § 60541(g)(5). Here, petitioner is 46 years old, and so plainly does not qualify on that ground. *See* Federal Bureau of Prisons Website, Inmate Locator, Register No. 75586-097, https://www.bop.gov/inmateloc/ (last visited May 25, 2021) (stating petitioner's age). Although the Petition includes a lengthy list of petitioner's ailments, none can be considered terminal illnesses. *See* Pet. at 19-20 (listing fifteen medical conditions,

18
Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS

such as psoriasis, kidney stones, and endometriosis). Although the Second Chance Act also provides for some inmates to be transferred to "prerelease custody" at institutions such as a "community correctional facility," *see* 18 U.S.C. § 3624(c), such transfers are not a release from imprisonment. *See United States v. Earl*, 729 F.3d 1064, 1068 (9th Cir. 2013) ("Because the prisoner remained in BOP's *legal* custody, even though he was housed elsewhere, he had not been 'released from imprisonment . . . .'"). Petitioner therefore cannot be released under the Second Chance Act. To the extent petitioner intends to request a transfer to another form of confinement under the Second Chance Act, rather than release from incarceration, this duplicates Claim 3 in the Petition and fails for the reasons discussed above.

It is unclear whether petitioner's claim under the First Step Act goes to credits she believes she has earned under the Act, *see* 18 U.S.C. §§ 3624(b), 3632(d), or to a request for compassionate release, *see* 18 U.S.C. § 3582(c)(1)(A)(i). *See generally*, Pet. If the former, this claim duplicates Claim 1 in the Petition, which the Court has given petitioner leave to amend. If the latter, then as explained above petitioner should direct her motion for compassionate release to the sentencing court. Claim 5 therefore fails to the extent petitioner seeks release under the First Step Act.

Finally, as noted above, the CARES Act allows the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement . . . ." CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). Prisoners placed in home confinement have not been released from imprisonment. *Cf. Earl*, 729 F.3d at 1068 (discussing the Elderly Offender Pilot Program, but distinguishing between releases and transfers to a venue of lesser confinement). Claim 5 therefore fails to the extent petitioner seeks release under the CARES Act. To the extent petitioner intends to request a transfer to another form of confinement under the CARES Act, rather than release from incarceration, this duplicates Claim 3 in the Petition and fails for the reasons discussed above.

Because petitioner's request for release fails whether it is brought under the Second Chance Act, the First Step Act, or the CARES Act, Claim 5 is dismissed without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Claim 1 is dismissed with leave to amend. Claims 2 through 5 are dismissed without leave to amend.

2. Petitioner must file, **within forty-five (45) days of this order**, either an amended petition ("Amended Petition") or a notice of whether petitioner elects to dismiss the instant proceeding ("Notice") so that petitioner may attempt to exhaust Claim 1.

If petitioner decides to file an Amended Petition, she must set forth all habeas claims she intends to bring in one document. Petitioner must include facts to support these claims. Petitioner should also clarify in any Amended Petition her efforts to exhaust Claim 1, and/or explain why exhaustion should be excused. Any Amended Petition will supersede any prior filings and may not incorporate by reference any parts of the original petition. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Any Amended Petition must include the caption and civil case number used in this order (No. 20-CV-02858-LHK (PR)) and the words "AMENDED PETITION" on the first page. The Amended Petition may not renew Claims 2 through 5.

3. **If petitioner fails to file an Amended Petition or a Notice within forty-five (45) days in conformity with this order, the case will be dismissed with prejudice.**

4. It is petitioner's responsibility to prosecute this case. Petitioner must keep the court and all parties informed of any change of address by filing a separate paper captioned "Notice of Change of Address." She must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

DATED: May 28, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 20-CV-02858-LHK
ORDER REOPENING ACTION; GRANTING APPL. TO PROCEED IFP; DISMISSING PET. W/ LEAVE TO AMEND AS TO ONE CLAIM AND W/O LEAVE TO AMEND AS TO FOUR CLAIMS